IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DANIEL HERRERA ALDANA, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 1:26-CV-335-RP |
| | § | |
| CHARLOTTE COLLINS, *in her official capacity as* | § | |
| *Warden of T. Don Hutto Detention Center*, et al., | § | |
| | § | |
| Respondents. | § | |

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Before the Court is Petitioner Daniel Herrera Aldana's ("Petitioner") Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, filed on February 12, 2026. (Dkt. 1). On February 17, 2026, pursuant to 28 U.S.C. § 2243, the Court ordered Respondents to show cause within three days as to why the petition should not be granted. (Dkt. 4). On February 20, 2026, Respondents Pamela Bondi, Kristi Noem, Todd M. Lyons, Miguel Eduardo Lopez-Vergara, and Sirce E. Owen[1] (together, "Respondents") timely filed a response in opposition, (Dkt. 6), to which Petitioner replied, (Dkt. 7). On February 27, 2026, the Court ordered Respondents to provide the Court with evidence and supplemental briefing regarding Petitioner's contention that he did not receive notice of his parole being terminated in April 2025. (Order, Dkt. 9). Respondents timely responded with supplemental briefing, (Dkt. 10), and Petitioner replied to their response, (Dkt. 11). Having considered the parties' arguments, the evidence presented, and the relevant law, the Court will grant Petitioner's Petition for Writ of Habeas Corpus.

---

[1] The Response is filed only on behalf of the federal employees in this action. (Dkt. 6, at 1 n.1).

1

## I. BACKGROUND

Petitioner, a Cuban national, is detained at the T. Don Hutto Detention Center located in Taylor, Texas. (Pet., Dkt. 1, at 5). On October 13, 2023, Petitioner presented himself to U.S. Customs and Border Patrol ("CBP"), was issued a Notice to Appear ("NTA"), and was placed in full removal proceedings pursuant to 8 U.S.C. § 1182(d)(5). (*Id.* at 2). Petitioner was released and issued parole pursuant to 8 U.S.C. § 1182(d)(5). (*Id.*). His parole was set to remain valid until October 11, 2025. (Original Form I-94, Dkt. 1-2). Relying on the grant of parole, Petitioner resided in the United States, and in January 2025, he filed a Form I-485 application for adjustment of status under the Cuban Adjustment Act. (*Id.*). His application remains pending. (*Id.*).

In April 2025, DHS purportedly terminated Petitioner's parole.[2] (*Id.* at 11). Petitioner alleges that he "received no notice of that termination." (*Id.*). Subsequently, on June 4, 2025, Petitioner was arrested for "assault,"[3] and DHS issued an immigration detainer for him. (Resp., Dkt. 6, at 4). Notably, despite Petitioner providing the Court with evidence that he was paroled after presenting himself to CBP officers, (Original I-94, Dkt. 1-2; Pet., Dkt. 1, at 2), Petitioner's Record of Deportable/Inadmissible Alien (Form I-213) states: "To wit, [Petitioner] was not admitted inspected or paroled into the United States by an immigration official nor did he present himself at a designated port of entry." (Record of Deportable/Inadmissible Alien, Dkt. 6-2, at 3). On September 3, 2025, U.S. Immigration and Customs Enforcement ("ICE") officers arrested Petitioner and placed him into custody. (*Id.*).

Petitioner challenges his detention through a writ of habeas corpus under 28 U.S.C. § 2241. Petitioner brings statutory and constitutional claims, including that his ongoing detention without

---

[2] A Form I-94 attached to the Petition indicates that his "Admit Until Date" was changed from October 11, 2025, to April 18, 2025. (Original Form I-94, Dkt. 1-2, at 4; Most Recent Form I-94, Dkt. 1-2, at 20).
[3] As of September 2025, Petitioner's assault charge was pending; neither Petitioner nor Respondents have informed the Court whether the charge remains pending. (Record of Deportable/Excludable Alien, Dkt. 6-2, at 3).

bond is unlawful in violation of his Fifth Amendment Due Process rights and the Immigration and Nationality Act ("INA"). (Pet., Dkt. 1, at 21–23).

In response to the Court's Order for evidence and supplemental briefing regarding Petitioner's parole being revoked, (Dkt. 9), Respondents assert: "On March 25, 2025, DHS published in the Federal Register the parole termination notice for nationals of Cuba, Haiti, Nicaragua, and Venezuela ('CHNV')." (Supp. Br., Dkt. 10, at 2). They further claim that "Petitioner should have also received separate independent written notice directly from [U.S. Customs and Immigration Services ("USCIS")], either through his online account or by mail. Petitioner does not explain whether he accessed his online USCIS account in 2025, and if he did, whether it contained any notice of termination." (*Id.* at 4).

Petitioner replies that that he "did not receive parole through the CHNV program" and that, "[b]ased on information and belief, Petitioner does not even have a USCIS account." (Supp. Br. Reply, Dkt. 11, at 4). He claims that entry into the United States via the CNHV parole programs required a U.S.-based sponsor to file a Form I-134A with USCIS, which would then provide the beneficiary with advance travel authorization. (*Id.*). Petitioner, on the other hand, asserts that he did not have advance authorization to enter the United States and instead requested humanitarian parole after presenting himself at a port of entry. (*Id.*). He points to his Form I-94, (Dkt. 1-2, at 4), which identifies his Class of Admission as "DT"; he states that "DT" corresponds to discretionary parole granted for humanitarian reasons or significant public benefit. (Supp. Br. Reply, Dkt. 11, at 4). Petitioner also notes that his NTA states that he is not in possession of a "valid entry document," "valid unexpired passport, or other suitable travel document."[4] (NTA, Dkt. 1-2, at 6; Supp. Br. Reply, Dkt. 11, at 4–5).

---

[4] Respondents themselves admit that "[a]t the time of his entry, he did not have a valid travel document, so [DHS], in the exercise of discretion, placed him into removal proceedings and paroled him into the United States for two years, pending those proceedings." (Supp. Br., Dkt. 10, at 2).

## II. DISCUSSION

### A. Whether Petitioner's Parole Was Properly Revoked

Before reaching the merits of Petitioner's claims, the Court will first address whether his grant of parole was validly revoked. 8 C.F.R. § 212.5(e) allows early termination of parole only "upon written notice" to the noncitizen. As discussed in Section I, *supra*, Respondents acknowledge in their Supplemental Briefing that Petitioner was paroled for two years, but they contend that his parole was properly terminated prior to his detention pursuant to the Federal Register parole termination notice published on March 25, 2025 (hereinafter "the CNHV Federal Register Notice"). (Supp. Br., Dkt. 10, at 2).

The Court disagrees that Petitioner's parole was properly revoked before he was detained in September 2025, given that he did not enter the United States pursuant to a CNHV parole program as claimed by Respondents. As stated by the very Federal Register Notice cited by Respondents, under the CNHV parole programs, "potentially eligible beneficiaries were adjudicated on a case-by-case basis, *for advance authorization* to travel to a U.S. port of entry ("POE") in the interior of the country to seek a discretionary grant of parole." Termination of Parole Processes for Cubans, Haitians, Nicaraguans, and Venezuelans, 90 Fed. Reg. 13611, 13611 (Mar. 25, 2025) (emphasis added). The Federal Register Notice cited to a prior notice in the Federal Register, which announced the creation of this unique parole program for Cuban citizens. *Id.* at 13611 n.1 (Mar. 25, 2025) (citing Implementation of a Chance to the Parole Process for Cubans, 88 Fed. Reg. 26329 (Apr. 28, 2023)). The April 2023 Federal Register notice explained that, under this program, "individuals must: (1) have a supporter in the United States who agrees to provide financial support for the duration of the beneficiary's parole period; (2) pass national security and public safety vetting; (3) fly at their own expense to an interior POE, rather than entering at a land POE; and (4) possess a valid, unexpired passport." 88 Fed. Reg. 26329, 26329 (Apr. 28, 2023).

4

The evidence provided to the Court—by both Petitioner and Respondents—makes clear that he could not have entered the United States pursuant to a CNHV parole program. Petitioner's NTA, issued on October 13, 2023, states: "The Department of Homeland Security alleges that you: . . . are an immigrant not in possession of a . . . valid entry document . . . and/or . . . You are an immigrant not in possession of a valid unexpired passport, or other suitable travel document." (NTA, Dkt. 1-2, at 6; NTA, Dkt. 6-1, at 2). Respondents themselves wrote in their Supplemental Briefing that Petitioner "did not possess a valid travel document" when he presented himself for inspection at a port of entry on October 13, 2023. (Supp. Br., Dkt. 10, at 2). Nor is there evidence in the record supporting that Petitioner had a "supporter" in the United States or went through any "vetting" process prior to him arriving the port of entry. Thus, based on the requirements outlined in 88 Federal Register 26329, Petitioner could not have entered the country pursuant to a CNHV parole program covered by the Federal Register Notice.[5] Instead, as alleged by Petitioner, (Dkt. 1, at 2), he must have been given a grant of humanitarian parole under 8 U.S.C. § 1182(d)(5).

Accordingly, based on the record in this case at this stage, the Court finds that Respondents have failed to show that Petitioner was given written notice of his parole being terminated early, and as a result, his parole was not validly revoked in April 2025. Thus, the Court will consider Petitioner's grant of parole as remaining valid until its original expiration date—October 11, 2025.[6]

---

[5] The Court also notes that, although the Court ordered Respondents to "provide the Court with evidence" on the matter of Petitioner's parole being revoked early and stated that Respondents could file a status report if they were unable to comply with the Order, (Order, Dkt. 9, at 2), Respondents filed Supplemental Briefing without any evidence on this subject. (Supp. Br., Dkt. 10). Rather than submitting a Status Report stating that they needed more time to obtain this evidence, Respondents instead put in a footnote that, "[g]iven the short turnaround for this response, the undersigned AUSA has been unable to review the alien file or obtain a copy of any notice that would have been mailed or otherwise provided directly to Petitioner." (*Id.* at 4 n.1).
[6] Respondents also assert, citing *Bouchikhi v. Holder*, 676 F.3d 173, 180 (5th Cir. 2012), that "Petitioner must exhaust this due process argument [regarding his parole termination] in his removal proceedings, because whether parole is properly revoked is a factual inquiry related to removability." (Supp. Br., Dkt. 10, at 4). *Bouchikhi* does not stand for this proposition, nor is it relevant to this case. For one, *Bouchikhi* appears to say nothing about exhaustion; the words "exhaust" or "exhaustion" are not used once in that opinion. Second, the Fifth Circuit in *Bouchikhi* stated that it lacks jurisdiction to review a determination of fact made by the Board of Immigration Appeals ("BIA") that "bear[s] on determinations of *the timeliness of an asylum*

### B. Petitioner's Petition for a Writ of Habeas Corpus

The Court will now address the merits of Petitioner's Petition for a Writ of Habeas Corpus. Respondents claim that Petitioner is "subject to mandatory detention under 8 U.S.C. § 1225(b)(2)." (Resp., Dkt. 6, at 1).[7] Humanitarian parole is the form of release available under the INA for an "arriving" noncitizen who is subject to mandatory detention under § 1225(b)(2)(A). *See Jennings v. Rodriguez*, 583 U.S. 281, 300 (2018) (explaining that noncitizens subject to mandatory detention under § 1225(b) may be "temporarily parole[d]" "for urgent humanitarian reasons or significant public benefit" under 8 U.S.C. § 1182(d)(5)(A)). Pursuant to 8 C.F.R. § 212.5(e), parole issued under § 1182(d)(5) terminates either (1) without written notice at the time it expires or upon the noncitizen's departure from the United States, or (2) with written notice "upon accomplishment of the purpose for which parole was authorized or when in the opinion of [certain DHS officials] neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States." In that case, after the written notice to the noncitizen, "he or she shall be restored to the status that he or she had at the time of parole." 8 C.F.R. § 212.5(e)(2)(i).

In analogous situations, other courts in the Western District of Texas have held that detention of a noncitizen with a valid grant of parole in place is unlawful. *See Camacho-Gutierrez v. Thompson*, No. 5:25-CV-01876-MA, 2026 WL 195758, at *1, 3 (W.D. Tex. Jan. 16, 2026) ("[B]ecause DHS re-detained [a petitioner]" with a valid, non-expired grant of parole "without notice or an

---

*application*"—not that it lacks jurisdiction to review *any* question of fact in immigration cases. *Id.* at 176, 178 (emphasis added) (citing *Zhu v. Gonzalez*, 493 F.3d 588, 593 (5th Cir. 2007)). *See also id.* at 176 (first citing *Zhang v. Gonzalez*, 432 F.3d 339, 343–44 (5th Cir. 2005); and then citing *Zhu*, 493 F.3d at 594–95) ("Generally, we have jurisdiction to review an [immigration judge's] determinations of fact under a substantial evidence standard. . . . But we lack jurisdiction to review findings of fact bearing on determinations of the timeliness of an asylum application."). Regardless, the Court in this case is not reviewing a finding of fact made by an immigration judge or the BIA.

[7] The Court notes that, although Respondents point out that Petitioner was arrested for assault in June 2025, (Resp., Dkt. 6, at 4), they do not claim to have detention authority based on this charge. (*Id.* at 1) (asserting detention authority under § 1225(b)(2)). And, though certain criminal charges do result in mandatory detention, "assault" is not one of these charges. *See* 8 U.S.C. § 1226(c)(1)(E).

individualized determination in violation of its own regulations, [her] detention is unlawful.); *Ramirez-Gavilan v. Collins*, --- F. Supp. 3d ---, No. 1:25-CV-2052-RP, 2026 WL 274705, at *5 n.7 (W.D. Tex. Jan. 17, 2026) (reasoning that if a petitioner is subject to mandatory detention under § 1225(b)(2)(A) but released pursuant to parole under § 1182(d)(5), so long as parole was not terminated when petitioner was redetained, he would be "held in violation of the INA—and must be released."); *Naveda v. Noem*, No. 5:26-CV-0018-JKP, 2026 WL 196394, at *1 (W.D. Tex. Jan. 15, 2026) ("[To] the extent Respondents improperly revoked Petitioner's release on humanitarian parole, such improper revocation makes her ineligible for detention under either 8 U.S.C. § 1225 or § 1226."). This Court agrees that detention of a noncitizen who has a valid grant of humanitarian parole violates the INA and its implementing regulations. Here, because the Court has found that Petitioner's grant of humanitarian parole was still valid when he was detained on September 3, 2025, the Court finds that Petitioner's detention is unlawful.[8]

Turning to relief, in habeas cases where the Court finds an ongoing detention unlawful, "the typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Ramirez-Gavilan*, 2026 WL 274705, at *5 n.7 (noting that redetention of a noncitizen with parole under § 1182(d)(5), without valid revocation of parole, would warrant release); *Camacho-Gutierrez*, 2026 WL 195758, at *5 (ordering release in similar circumstances). The Court will therefore order Petitioner's release.

---

[8] While the Court need not reach Petitioner's constitutional claim, the Court notes that other courts in this District have determined that the detention of a petitioner with a valid humanitarian/public benefit parole status, without going through the proper procedure to revoke the parole, also violates the Due Process Clause. *See, e.g.*, *Camacho-Gutierrez*, 2026 WL 195758, at *5; *Marceau v. Noem*, No. EP-26-CV-237-KC, 2026 WL 368953, at *1 (W.D. Tex. Feb. 9, 2026) (reasoning that, even if a noncitizen's grant of humanitarian parole *had* expired or been terminated, Respondents may not detain them "without an individualized determination of the need to do so"). *See also Schweiker v. Hogan*, 457 U.S. 569, 584 (1982) (citation omitted) (noting that courts should first address statutory arguments in order to avoid unnecessary resolution of constitutional issues).

## III. CONCLUSION

The foregoing order constitutes the Court's findings of fact and conclusions of law. For the reasons discussed above, **IT IS ORDERED** that Petitioner's Petition for Writ of Habeas Corpus is **GRANTED** as follows. All relief not granted is **DENIED**.

1. Upon receipt of this order, Respondents shall <u>immediately</u> release Petitioner from custody;

2. Respondents shall release Petitioner under conditions no more restrictive than those in place prior to the detention at issue in this case;

3. As soon as is practicable, and no less than two hours before release, Respondents shall notify Petitioner's counsel by email[9] of the exact location and time of Petitioner's release;

4. Respondents are enjoined from further detaining Petitioner so long as his parole status remains valid. Respondents are enjoined from revoking his parole status without following 8 C.F.R. § 212.5 and other applicable regulations.

**IT IS FURTHER ORDERED** that Respondents shall provide a status report on **or before March 11, 2026**, detailing their compliance with this Order.

**SIGNED** on March 9, 2026.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

---

[9] Jesus Dario Elizondo, jesus.d.elizondo.sanchez@gmail.com